1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17

| | |
|---|---|
| WILFREDO D. MORAN,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>Defendant. | ) Case No. CV 10-4949 JCG<br>)<br>)<br>)<br>) **MEMORANDUM OPINION AND**<br>) **ORDER**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

18
19

## I.

20

## INTRODUCTION AND SUMMARY

21      On July 8, 2010, plaintiff Wilfredo D. Moran ("Plaintiff") filed a complaint

22  against defendant Michael J. Astrue ("Defendant"), the Commissioner of the Social

23  Security Administration, seeking review of a denial of supplemental security income

24  benefits ("SSI").  [Docket No. 4.]

25      On January 28, 2011, Defendant filed his answer, along with a certified copy

26  of the administrative record.  [Docket Nos. 17-19.]

27      In sum, having carefully studied, *inter alia*, the parties' joint stipulation and

28  the administrative record, the Court concludes that, as detailed below, there is

1  substantial evidence in the record, taken as a whole, to support the decision of the

2  Administrative Law Judge ("ALJ").  Thus, the Court affirms the Commissioner's

3  decision denying benefits.

4  ## II.

5  ## PERTINENT FACTUAL AND PROCEDURAL BACKGROUND

6  Plaintiff, who was 30 years old on the date of his administrative hearing, has a

7  high school equivalent education.  (*See* Administrative Record ("AR") at 17, 75, 89.)

8  On June 28, 2007, Plaintiff filed for SSI, alleging that he has been disabled

9  since August 8, 1994 due to an amputated right leg, and right hip, leg, and arm

10  problems.  (*See* AR at 45, 46, 75, 85.)

11  On April 27, 2009, Plaintiff, represented by counsel, appeared and testified at

12  a hearing before an ALJ.  (*See* AR at 17-44.)  The ALJ also heard testimony from

13  Randi Hetrick, a vocational expert ("VE").  (*Id.*; *see also id.* at 74.)

14  On May 19, 2009, the ALJ denied Plaintiff's request for benefits.  (AR at 10-

15  16.)  Applying the familiar five-step sequential evaluation process, the ALJ found, at

16  step one, that Plaintiff has not engaged in substantial gainful activity since his SSI

17  application date.  (*Id.* at 12.)

18  At step two, the ALJ found that Plaintiff suffers from severe impairments

19  consisting of "right leg amputation with prosthesis and obesity."  (AR at 12

20  (emphasis omitted).)

21  At step three, the ALJ determined that the evidence did not demonstrate that

22  Plaintiff's impairments, either individually or in combination, meet or medically

23  equaled the severity of any listing set forth in the Social Security regulations.[1]  (AR

24  at 12.)

25

26

27

28  [1]  *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

1    The ALJ then assessed Plaintiff's residual functional capacity[2] ("RFC") and

2    determined that prior to attaining a new prosthesis in 2009, he could perform

3    sedentary work.  (AR at 13.)  Specifically, the ALJ found Plaintiff "could

4    occasionally lift up to 10 pounds; occasionally lift and carry items such as docket

5    files, ledgers and small tools; stand and walk for approximately 2 hours per 8-hour

6    workday, with normal breaks; and sit for approximately 6 hours per 8-hour workday,

7    with normal breaks" and "was restricted from climbing ladders, ropes, and scaffold[,

8    but] . . . could climb ramps or stairs, and occasionally balance, stoop, kneel, crouch

9    or crawl."  (*Id.*)  Further, the ALJ determined he "could occasionally walk on uneven

10   ground and needed a handheld assistive device for prolonged ambulation[, but] . . .

11   would not be required to operate foot controls with the right lower extremity" and

12   "would need to avoid hazardous machinery, unprotected heights, and other high-

13   risk, hazardous, or other unsafe conditions."  (*Id.*)

14   The ALJ also assessed Plaintiff's RFC subsequent to attaining a new

15   prosthesis and found Plaintiff can perform medium work.  (AR at 13.)  The ALJ

16   found Plaintiff "can occasionally lift up to 20 pounds and frequently lift up to 10

17   pounds," "can stand or walk for approximately 6 hours per 8-hour workday, with

18   normal breaks; and sit for approximately 2 hours per 8-hour workday, with normal

19   breaks."  (*Id.*)  The ALJ restricted Plaintiff from "climbing ladders," but found he

20   can "frequently climb ramps/stairs and frequently walk on uneven ground."  (*Id.*)

21   The ALJ found, at step four, that Plaintiff was capable of performing his past

22

23

24   _____

25   [2]   Residual functional capacity is what a claimant can still do despite existing
     exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155

26   n. 5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the
     ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's

27   residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th

28   Cir. 2007).

1   relevant work as an order taker and phone solicitator.[3/]  (AR at 14-15.)

2          At step five, based on both of Plaintiff's RFCs and the VE's testimony, the

3   ALJ found that Plaintiff "has acquired work skills from past relevant work that are

4   transferable to other occupations with jobs existing in significant numbers in the

5   national economy," including order clerk, assembler, and charge account clerk.  (AR

6   at 15-16 (emphasis omitted).)  Thus, the ALJ concluded that Plaintiff was not

7   suffering from a disability as defined by the Act.  (*Id.* at 10, 16.)

8          Plaintiff filed a timely request for review of the ALJ's decision, which was

9   denied by the Appeals Council.  (AR at 1-3, 5.)  The ALJ's decision stands as the

10  final decision of the Commissioner.

11                                         **III.**

12                              **STANDARD OF REVIEW**

13         This Court is empowered to review decisions by the Commissioner to deny

14  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

15  Administration must be upheld if they are free of legal error and supported by

16  substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as*

17  *amended* Dec. 21, 2001).  If the court, however, determines that the ALJ's findings

18  are based on legal error or are not supported by substantial evidence in the record,

19  the court may reject the findings and set aside the decision to deny benefits.

20  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*,

21  242 F.3d 1144, 1147 (9th Cir. 2001).

22         "Substantial evidence is more than a mere scintilla, but less than a

23

24  _____

25     [3/]   The ALJ stated that "[g]iven that the record does not clearly establish whether
    these past occupations were performed at substantial gainful activity levels," he
26  continued to proceed "with the sequential evaluation process to the fifth step to
    demonstrate, in the alternative, that even if [Plaintiff] were precluded from returning
27  to his past relevant work, other jobs exist in significant numbers which he is capable
28  of performing."  (AR at 15.)

                                             4

1  preponderance." *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant

2  evidence which a reasonable person might accept as adequate to support a

3  conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d

4  at 459.  To determine whether substantial evidence supports the ALJ's finding, the

5  reviewing court must review the administrative record as a whole, "weighing both

6  the evidence that supports and the evidence that detracts from the ALJ's

7  conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be affirmed

8  simply by isolating a specific quantum of supporting evidence.'"  *Aukland*, 257 F.3d

9  at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the

10 evidence can reasonably support either affirming or reversing the ALJ's decision,

11 the reviewing court "'may not substitute its judgment for that of the ALJ.'"  *Id.*

12 (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

13                                      **IV.**

14                         **ISSUES PRESENTED**

15       Two disputed issues are presented for decision here:

16       1.       whether the ALJ erred in failing to find Plaintiff's impairments met or

17 equaled § 1.05B of the Listing of Impairments (the "Listing") for a "closed period of

18 time between June 28, 2007, and March 16, 2009," the time period in which

19 Plaintiff's prosthesis "did not fit well at all," (*see* Joint Stip. at 3-8, 12-14); and

20       2.       whether the ALJ properly assessed Plaintiff's credibility.  (*See id.* at 14-

21 18, 22-23.)

22                                      **V.**

23                     **DISCUSSION AND ANALYSIS**

24       A.     Meeting a Listed Impairment

25       Plaintiff argues that there are "two separate and distinct bases for which [he]

26 is unable to ambulate effectively" under § 1.05B of the Listing.  (Joint Stip. at 5-6.)

27 Plaintiff contends that the ALJ failed to consider evidence that Plaintiff had "an

28 environmental barrier against uneven surfaces and stairs" and an "added limitation

1  against climbing a few steps at a reasonable pace with the use of a single hand rail"
2  during the relevant time period.  (*Id.*)

3                    1.    <u>Standard to Meet or Equal the Listing</u>

4         To meet or equal the Listing, plaintiff has the burden of establishing that he
5  meets or equals each characteristic of a listed impairment.  *Tackett v. Apfel*, 180 F.3d
6  1094, 1099 (9th Cir. 1999).  "An impairment 'meets' a listed condition in the Listing
7  of Impairments only when it manifests the specific findings described in the set of
8  medical criteria for that listed impairment."  Social Security Ruling ("SSR") 83-19,[4/]
9  1983 WL 31248, at *2.  An impairment "equals" a listed impairment when "the set
10 of symptoms, signs, and laboratory findings in the medical evidence supporting a
11 claim . . . are at least equivalent in severity to the set of medical findings for the
12 listed impairment."  *Id.*

13        As relevant here, Listing § 1.05B relates to "amputation (due to any cause)" of
14 "[o]ne or both lower extremities at or above the tarsal region, with stump
15 complications resulting in medical inability to use a prosthetic device to ambulate
16 effectively, as defined in 1.00B2b, which have lasted or are expected to last for at
17 least 12 months[.]"  20 C.F.R., pt. 404, subpt. P, app. 1.  Under § 1.00B2b of the
18 Listing, "inability to ambulate effectively" is defined as "an extreme limitation of the
19 ability to walk; i.e., an impairment(s) that interferes very seriously with the
20 individual's ability to independently initiate, sustain, or complete activities."  *Id.*
21 "Ineffective ambulation is defined generally as having insufficient lower extremity
22 functioning . . . to permit independent ambulation without the use of a hand-held

23 _____

24      [4/]   "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the
   Act's implementing regulations and the agency's policies.  SSRs are binding on all
25 components of the [Social Security Administration].  SSRs do not have the force of
   law.  However, because they represent the Commissioner's interpretation of the
26 agency's regulations, we give them some deference.  We will not defer to SSRs if
   they are inconsistent with the statute or regulations."  *Holohan v. Massanari*, 246
27 F.3d 1195, 1203 n. 1 (9th Cir. 2001) (internal citations omitted).
28

1  assistive device(s) that limits the functioning of both upper extremities." *Id.*

2  Section 1.00B2b further provides that "[t]o ambulate effectively, individuals

3  must be capable of sustaining a reasonable walking pace over a sufficient distance to

4  be able to carry out activities of daily living. . . . Therefore, examples of ineffective

5  ambulation include, but are not limited to, the inability to walk without the use of a

6  walker, two crutches or two canes, the inability to walk a block at a reasonable pace

7  on rough or uneven surfaces, the inability to use standard public transportation, the

8  inability to carry out routine ambulatory activities, such as shopping and banking,

9  and the inability to climb a few steps at a reasonable pace with the use of a single

10  hand rail." 20 C.F.R., pt. 404, subpt. P, app. 1. The regulations also state that "the

11  individual's medical ability to use a prosthesis to ambulate effectively . . . should be

12  evaluated." *Id.* § 1.00J.

13  **2.   ALJ's Listing Determination**

14  The Court concludes that the ALJ's step three determination is supported by

15  substantial evidence, and any error made by the ALJ in his step three evaluation was

16  harmless. Two reasons guide this determination.

17  First, both Plaintiff and Defendant fail to address the fact that Plaintiff was

18  repeatedly prescribed a new prosthesis during the relevant time period, but failed to

19  obtain one. Listing § 1.05B requires that Plaintiff must have a "*medical inability* to

20  use a prosthetic device to ambulate effectively." 20 C.F.R., pt. 404, subpt. P, app. 1

21  (emphasis added); *see, e.g., Larsen v. Astrue*, 2010 WL 1416129, at *4 (E.D. Wash.

22  2010) (holding ALJ properly found plaintiff made no showing that he is unable to

23  use a prosthesis to ambulate effectively, and affirming denial of benefits where

24  plaintiff chose not to use prosthesis at work). The evidence shows that Plaintiff

25  knew he needed a new prosthesis and was prescribed one during the time period at

26  issue. For instance, on October 5, 2007, Plaintiff informed the orthopedic examining

27  physician, "I think I need a new leg," and the examining physician reported that

28  Plaintiff's prosthesis is "obviously too large." (*See* AR at 125 (orthopedic

7

consultative examination report); *see also id.* at 146, 170 (treatment note, dated January 2, 2008, Rodney Jones reporting that Plaintiff is "an excellent candidate for a new prosthesis due to volume change and technical problems with foot/article components").)  In fact, Plaintiff concedes that he is able to use a prosthesis which enables him to work.  (*See* Joint Stip. at 3 (Plaintiff "fortunately received a [new] prosthesis on February 27, 2009, and eventually regained his ability to work shortly thereafter.").)  Plaintiff cannot be found disabled for his failure to follow a prescribed course of treatment that would have restored his ability to work.  *See* SSR 82-59, 1982 WL 31384, at *1 (claimant cannot be found disabled if he fails, without justifiable cause, to follow treatment that would restore his ability to work).

Further, a review of the record fails to demonstrate that Plaintiff exhausted all his available resources to obtain a prosthesis, but could not do so.  (*See* AR at 32 (Plaintiff's testimony that he did not have health insurance).)  Although an ALJ may not reject a claim on the basis of failing to seek treatment when the claimant is unable to afford it, the burden is on Plaintiff to present documentation of his financial circumstances and contacts with reasonably available community resources before inability to pay can be used as a basis for benefits.  *See Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995); SSR 82-59, 1982 WL 31384, at *4 (claimant must explore all possible resources, including clinics, charitable and public assistance agencies, etc., and contacts with such resources and the claimant's financial circumstances must be documented before a failure to follow treatment will be found justifiable due to inability to afford prescribed treatment); *Larsen*, 2010 WL 1416129, at *5 (rejecting plaintiff's claim that he could not afford a prosthesis where he did not show he contacted available community resources to obtain a prosthesis).

Second, substantial evidence supports the ALJ's conclusion that "the medical evidence does not indicate that [Plaintiff] is unable to ambulate effectively per 1.00B2b."  (AR at 13.)  The only objective medical evidence Plaintiff presents in support of his assertion that his impairments meet or equal Listing § 1.05B is a

8

seven-page checklist form completed by Rodney Jones ("Mr. Jones").  (AR at 161-67; Joint Stip. at 5-6.)  In the form, Mr. Jones indicates that Plaintiff has "environmental barriers" pertaining to "uneven surfaces" and "stairs," (AR at 164), but the form provides no further explanation, description of the severity of Plaintiff's inabilities, or medical findings.  *Cf. Burkhart v. Bowen*, 856 F.2d 1335, 1339-40 (9th Cir. 1988) (ALJ properly rejected treating physicians' opinion which was unsupported by medical findings, personal observations or test reports).

While Plaintiff argues that the ALJ failed to consider Mr. Jones' opinion, (Joint Stip. at 6.), even assuming *arguendo* that the Court credited his opinion, his opinion is inconsequential to the ultimate non-disability determination in light of the fact that Plaintiff fails to meet his burden to prove a *medical inability* to use a prosthetic device to ambulate effectively under Listing § 1.05B, as explained above.[5/]  *See Stout v. Commissioner*, 454 F.3d 1050, 1055 (9th Cir. 2006) (holding that harmless errors are those that are inconsequential to the ultimate non-disability determination); *see also* 20 C.F.R., pt. 404, subpt. P, app. 1, § 1.00J ("the individual's medical ability to use a prosthesis to ambulate effectively . . . should be evaluated").

Thus, the Court finds that there is substantial evidence to support the ALJ's step three determination and any error made by the ALJ in failing to consider Mr. Jones' opinion was harmless.

B.    Plaintiff's Credibility

---

[5/]   The Court notes that Defendant maintains that to show an inability to effectively ambulate "requires that Plaintiff need two crutches to ambulate." (Joint Stip. at 9.)  Defendant is mistaken.  While the required use of a two-handed assistive device is independently sufficient to establish ineffective ambulation, ineffective ambulation may also be established if the claimant otherwise meets the definition and examples set forth in the Listing, *i.e.*, an "inability to walk a block at a reasonable pace on rough or uneven surfaces."  *See Dobson v. Astrue*, 267 Fed.Appx. 610, 612 (9th Cir. 2008).

1    Plaintiff argues that "when the ALJ rejected [Plaintiff's] testimony because

2    [his] testimony was not corroborated by the medical evidence, the ALJ effectively

3    applied the incorrect standard of law." (Joint Stip. at 16.) Plaintiff's argument

4    centers around his statements regarding his ability to ambulate effectively. (*See id.*

5    at 18.) Plaintiff contends that his statements that his "utilization of crutches,

6    inability to walk a few steps at a reasonable pace, and inability to walk at a

7    reasonable pace on uneven ground," if credited as true "result[] in a finding of

8    disability under Listing 1.05B." (*Id.*)

9    Under the circumstances, *see supra* § V.A.2, and given that Plaintiff's

10   credibility argument is based on his assertion that his statements, if credited,

11   necessitate a "finding of disability under Listing 1.05B," (Joint Stip. at 18), the

12   Court concludes that any error made by the ALJ in his credibility analysis was

13   harmless. Even if the Court were to credit Plaintiff's testimony as true, Plaintiff still

14   would not meet the set of medical criteria required by Listing § 1.05B because

15   Plaintiff failed to obtain a proper-fitting prosthesis during the relevant time period

16   and did not show justifiable cause for his failure to do so. *Stout*, 454 F.3d at 1055.

17   Further, Plaintiff testified that his treating physicians "told [him] to keep [his]

18   leg off for like six months" due to "blisters" from the ill-fitting prosthesis. (AR at

19   32.) However, to meet Listing § 1.05B, the inability to ambulate effectively had to

20   "have lasted . . . for at least 12 months[.]" 20 C.F.R., pt. 404, subpt. P, app. 1.

21   Based on the foregoing, IT IS ORDERED THAT judgment shall be entered

22   **AFFIRMING** the decision of the Commissioner denying benefits.

23

24   Dated: October 28, 2011                    _____

25                                                        Hon. Jay C. Gandhi

26                                                   United States Magistrate Judge

27

28

10